# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISSY D.,[1]<br>        **Plaintiff,**<br>v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>        **Defendant.** | NO. CV 17-5834-KS<br><br>MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

Plaintiff filed a Complaint on August 7, 2017 seeking review of the denial of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Dkt. No. 1.) The parties have consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13.) On July 30, 2018, the parties filed a Joint Stipulation. (Dkt. No. 21 ("Joint Stip.").) Plaintiff seeks an order reversing the Commissioner's decision and remanding the matter for an award of benefits, or in the alternative, remanding for further administrative proceedings. (Joint Stip.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

at 8, 12-13.) The Commissioner requests that the Administrative Law Judge's decision be affirmed or, in the alternative, remanded for further proceedings. (*Id.* at 12, 13-14.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On December 4, 2013, Plaintiff protectively filed an application for SSI.[2] (Administrative Record ("AR") 25, 62, 126-35.) Plaintiff alleged disability commencing on February 8, 2013 due to "chronic lumbar pain in spine." (AR 62, 146.) After the Commissioner denied Plaintiff's application initially (AR 71-75), Plaintiff requested a hearing (AR 76).

At a hearing held on February 8, 2016, at which Plaintiff appeared with counsel, Administrative Law Judge Sally C. Reason ("ALJ") heard testimony from Medical Expert, Dr. Anthony Francis, Plaintiff, and Ronald Hatakeyama, Vocational Expert ("VE"). (AR 38-61.) On February 24, 2016, the ALJ issued an unfavorable decision denying Plaintiff's application for SSI. (AR 22-33.) On June 13, 2017, the Appeals Council denied Plaintiff's request for review. (AR 2-6.) This timely complaint seeking review of that denial followed. (Dkt. No. 1.)

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five-step sequential evaluation process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since she applied for SSI. (AR 27.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, mild levoscoliosis of the thoracic spine, morbid obesity, left

---

[2] Plaintiff was 43 years old on the application date and thus met the agency's definition of a younger person. *See* 20 C.F.R. § 416.963(c).

shoulder rotator cuff tendonitis, back sprain, and opiate dependence. (AR 27.) The ALJ found that Plaintiff's other medically determinable impairments were non-severe. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (AR 28.) The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to "perform light work . . . with the following limitations: she can occasionally perform postural activities and she should avoid hazards such as working at heights and climbing ladders, ropes, and scaffolds." (*Id.*)

Based on the testimony of the VE, at step four, the ALJ found that Plaintiff could not perform her past relevant work as a certified nurse's assistant. (AR 31.) The ALJ did find, however, at step five that Plaintiff could perform other jobs existing in the national economy, including companion (DOT[3] 309.677-010), a light, semiskilled occupation; and personal attendant (DOT 309.674-014), a light semiskilled occupation. (AR 31-32.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 32-33.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations omitted). "Even when the

---

[3] "DOT" refers to the *Dictionary of Occupational Titles* (U.S. Department of Labor, 1991).

evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

**DISPUTED ISSUE**

Plaintiff raises a single issue: Whether the ALJ properly considered the medical evidence as contained in the treating opinions. (Joint Stip. at 4.) For the reasons discussed below, the Court concludes that this issue does not warrant reversal of the ALJ's decision.
///

## DISCUSSION

I. <u>**Whether the ALJ Properly Evaluated the Treating Physician Opinions and Records**</u>

Plaintiff contends that the ALJ failed to properly weigh the opinions and records of two of her treating physicians, Doctors Karlon Johnson, M.D., and Josh Baek, D.O.. (Joint Stip. at 4-8.)

A. **Treating Record Evidence**

Doctors Karlon Johnson, M.D., and Josh Baek, D.O., treated Plaintiff at the Northeast Community Clinic. (AR 193-209, 226-290.) The record shows Plaintiff received treatment at the Northeast Community Clinic from November 9, 2012 through May 20, 2015. (AR 193-209, 226-290.) Plaintiff did see doctors other than Doctors Johnson and Baek at the Northeast Community Clinic during that time frame, but Plaintiff does not dispute the ALJ's weighing of these other doctors' findings.

On January 30, 2013, Plaintiff saw Dr. Baek and reported experiencing back pain for two weeks and requested physical therapy and an x-ray. (AR 202-03.) Dr. Baek observed Plaintiff's gait to be "antalgic due to pain" and noted tenderness on the paravertebral muscles along the thoracic and lumbar spine. (AR 203.) Dr. Baek wrote "chronic pain syndrome" and "backache unspecified" on Plaintiff's chart. (*Id.*) He prescribed Vicodin, Soma, and Ibuprofen and ordered physical therapy and x-rays of Plaintiff's thoracic and lumbar spine. (*Id.*)

On February 7, 2013, Plaintiff saw Dr. Baek and reported experiencing pain in her left shoulder that she believed was triggered because of her work. (AR 200.) Plaintiff said she

had been taking a muscle relaxant, anti-inflammatory, and Vicodin, but was still experiencing pain. (*Id.*) Dr. Baek told her to ice her shoulder, rest, and to keep taking the muscle relaxant and anti-inflammatory. (*Id.*) He also excused her from work for two days, as she requested, and advised her to return if the pain persisted and they would take an MRI to check for a rotator cuff tear. (AR 200-01.)

On February 25, 2013, Plaintiff underwent x-rays of her thoracic and lumbar spine. (AR 208-09.) The thoracic spine x-ray showed mild levoscoliosis based on a "mild curve of the thoracic spine to the left measuring 5 degrees" but everything else on the thoracic x-ray appeared normal. (AR 208.) The x-ray of Plaintiff's lumbar spine was normal. (AR 209.)

On March 12, 2013, Plaintiff saw Dr. Johnson and reported experiencing lower back pain for over a year but said she had only attended one or two physical therapy sessions. (AR 198-99.) Dr. Johnson wrote "backache unspecified" on Plaintiff's chart. (AR 198.) Dr. Johnson continued Plaintiff's physical therapy, limited her to lifting no more than five pounds for three weeks, prescribed pain medication including Vicodin, and directed Plaintiff to return for a follow-up in three weeks. (AR 199.) Dr. Johnson also specifically included work restrictions that Plaintiff should not lift or pull more than five pounds, and she should not bend, stoop, or crawl and included a follow-up on the work restriction in three weeks. (AR 199.)

On April 2, 2013, Plaintiff saw Dr. Johnson for a follow-up on her lower back pain. (AR 196-97.) Plaintiff reported missing her physical therapy sessions, but had a session scheduled for that day. (AR 196.) Findings from x-rays of Plaintiff's thoracic and lumbar spine on Plaintiff's chart included "mild levoscoliosis, otherwise WNL," meaning within normal limits. (AR 196.) Dr. Johnson wrote lumbago and "non-compliant with physical therapy" on Plaintiff's chart. (AR 196.) Dr. Johnson extended Plaintiff's work restricts for two weeks and refilled her medications. (AR 196.) Dr. Johnson also noted that he told

Plaintiff he "would not extend her work restrictions" if she did not follow his recommended treatment. (AR 196.)

On May 2, 2013, Plaintiff reported to Dr. Baek that she had experienced back pain for over a year, had finished physical therapy, but still had pain in her mid and lower back that radiated down to her left leg. (AR 194-95.) Dr. Baek noted "lumbago with radiculopathy" and "chronic pain syndrome" on Plaintiff's chart, continued her work restriction until she could see an orthopedic doctor, and refilled her prescriptions for pain medications. (AR 194.) He also referred her to an orthopedic doctor for: "1. Evaluation of the pain which appears to be herniated disc. 2. Treatment of the pain with possible surgery or injection. [and] 3. Order MRI at his/her discretion for confirmation." (AR 195.)

On October 4, 2013, Plaintiff saw Dr. Kevin Park for an orthopedic re-evaluation. (AR 277-78.) The record indicates this was a follow-up visit, but no other records from this doctor are included in Plaintiff's record. Dr. Park diagnosed Plaintiff with "low back pain with underlying L4-L5 and L5-S1 degenerative disc disease with right-sided foraminal stenosis." (AR 277.) He also noted Plaintiff's disability status as "permanent stationary" and there was no change in her permanent work restriction or future medical treatment. (AR 278.) Plaintiff's progress notes from the physical examination, however, only indicate tenderness in the lumbosacral spine, a negative straight leg raise test, and normal motor strength, sensory examination, deep tendon reflexes, and toe and heel stance. (AR 277.)

On January 15, 2014, Plaintiff saw Dr. Johnson and reported experiencing lower back pain for four weeks. (AR 254-55.) Dr. Johnson wrote lumbago on Plaintiff's chart, prescribed baclofen, voltaren, and "warm water soaks and gentle massage" as needed. (AR 254.)

///
///

On March 17, 2014, Plaintiff underwent x-rays showing multiple views of her lumbar spine. (AR 274.) The x-rays showed her lumbar spine was normal. (*Id.*)

On March 13, 2014, Plaintiff underwent an orthopedic consultation examination performed by Dr. Anh Tat Hoang. (AR 219-23.) Dr. Hoang observed "tenderness over lumbar spinous process" but no muscle spasms and no sciatic notch tenderness. (AR 221.) Dr. Hoang noted that Plaintiff winced with pain when trying to perform the straight leg raise test from the supine position. (*Id.*) Plaintiff tested positive for left shoulder rotator cuff impingement. (*Id.*) The x-rays of Plaintiff's lumbar spine did not reveal any problems. (AR 222.) The x-ray of Plaintiff's left shoulder also did not reveal any problems. (*Id.*) Dr. Hoang diagnosed Plaintiff with "lumbar sprain/strain" and "left shoulder rotator cuff tendinitis." (*Id.*) Dr. Hoang then opined Plaintiff could perform medium work. (AR 223.)

On June 6, 2014, Dr. Luigi Galloni, an orthopedic surgeon, examined Plaintiff after a referral for an orthopedic consultation. (AR 275.) Dr. Galloni noted Plaintiff had "tenderness at the lower segment of the L5-S1 level at the midline and the facets." (AR 276.) He also noted "some slight paravertebral muscular tenderness with tension" and that Plaintiff experienced pain in her lower back during the straight leg raise test. (*Id.*) Based on his observations, Dr. Galloni opined Plaintiff had "axial low back pain" and he wanted to "rule out discogenic versus facetogenic pain." (AR 276.) He recommended "a good restorative physical therapy program for the lower back concentrating on stretching and strengthening," x-rays of her lumbar spine, an MRI of her lumbar spine, and continued pain medication as directed by her primary doctor. (AR 276.)

At the ALJ hearing on February 8, 2016, Dr. Anthony Francis testified as the medical expert. (AR 38.) Dr. Francis stated that Plaintiff's record indicated "chronic musculoskeletal pain" without evidence of radiculopathy and left shoulder strain. (AR 45.) Dr. Francis opined that a medium RFC would be appropriate, but the additional evidence of

fibromyalgia presented at the ALJ hearing would also support reducing the RFC to light.[4] (AR 45-47.)

B. **Applicable Law**

There are three categories of physicians: treating physicians, examining physicians, and nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see* 20 C.F.R. § 416.927.[5] Treating physician opinions should be given more weight than examining or nonexamining physician opinions. *Orn*, 495 F.3d at 632. If the treating physician's opinion is not contradicted by another doctor, it may be rejected only if the ALJ provides "clear and convincing reasons supported by substantial evidence in the record." *Id.* If the treating physician's opinion is contradicted by another doctor, it may be rejected only by "specific and legitimate reasons supported by substantial evidence in the record." *Id.*

Examining physician opinions are given more weight than nonexamining physician opinions. *Lester*, 81 F.3d at 830. If the examining physician's opinion is not contradicted by another doctor, it too may be rejected only if the ALJ provides clear and convincing reasons supported by substantial evidence in the record. *Id.* If the examining physician's opinion is contradicted by another doctor, it may be rejected only if there are specific and legitimate reasons supported by substantial evidence in the record. *Id.* at 830-31.

///
///
///

---

[4] The ALJ noted in her February 2016 decision that Plaintiff was diagnosed with fibromyalgia in December 2015. (AR 27, 33.) The ALJ found that this impairment was nonsevere because it did not meet the twelve-month duration requirement. (AR 27.) The parties do not dispute this.

[5] Effective March 27, 2017, the Social Security Administration revised its regulations governing the evaluation of medical opinion evidence, including 20 C.F.R § 416.927. Claims filed before March 27, 2017, are governed by 20 C.F.R. § 416.927, while claims filed on or after March 27, 2017 are governed by § 416.920c. Thus, the revisions are not applicable or relevant to the analysis here of Plaintiff's December 4, 2013 application for SSI.

An ALJ can satisfy the substantial and legitimate reasons standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretations thereof, and making findings." *Orn*, 495 F.3d at 632.

**C.     Analysis**

Here, Plaintiff challenges the ALJ's treatment of the opinions of Drs. Johnson and Baek. (Joint Stip. at 4-8.) Plaintiff argues that the ALJ did not provide any reasoning for rejecting these opinions, but rather substituted her own lay opinion. (Joint Stip. at 6.) Defendant argues that the ALJ provided legally sufficient reasons supported by the record for discounting the opinions, namely that the ALJ relied on the testimony of a medical expert and the opinions referenced by Plaintiff were not opinions of "lasting functional limitations." (*Id*. at 8-12.)

The opinions of Drs. Johnson and Baek that Plaintiff contends were rejected without analysis are located at AR 195 and AR 199. (*See* Joint Stip. at 5-6.)    Dr. Johnson found Plaintiff had an unspecified backache and directed Plaintiff on March 12, 2013 to lift no more than five pounds for three weeks and also imposed this as a work restriction on Plaintiff with additional work restrictions of no bending, stooping, or crawling for three weeks. (AR 199.)  These restrictions were to be re-evaluated at Plaintiff's follow up appointment three weeks later. (AR 199.) Dr. Baek diagnosed Plaintiff with lumbago and chronic pain symptom and continued Dr. Johnson's restrictions on May 2, 2013 until Plaintiff could be examined by an orthopedic doctor. (AR 195.)

Although the ALJ did not refer to these medical records by stating the doctors' names, the ALJ did address them in detail in her decision. (AR 29.) The ALJ cited to them by exhibit and page number. (AR 29.)  She noted the records were from dates prior to the application filing date. (AR 29.)   She also noted that: "[t]here were some positive

examination findings, but thoracic x-ray imaging revealed only mild levoscoliosis and lumbar x-ray imaging was normal." (AR 29.) The ALJ continued her evaluation by noting a few months after these x-rays, Plaintiff underwent an orthopedic re-evaluation by Dr. Park in which Plaintiff was diagnosed with "lumbar degenerative disk disease at L4-5 and L5-S1 with foraminal stenosis." (*Id.*) Plaintiff's recommended treatment plan following this diagnosis included "medication, a back brace, and a home exercise program." (*Id.*) The ALJ then noted that the record contained no subsequent records from the doctor who did this re-evaluation. (*Id.*)

The ALJ also noted that the record contained later objective test results, lumbar spine x-rays from 2014, that were normal. (*Id.*) The ALJ pointed out that orthopedic consultative examiner, Dr. Hoang, only diagnosed Plaintiff with lumbar sprain/strain and left shoulder rotator cuff tendonitis. (*Id.*) The ALJ also observed that orthopedic consultative examiner, Dr. Galloni, recommended additional physical therapy and an MRI, but there is no record of either. (AR 30.) The ALJ does not specifically say that Dr. Johnson's and Dr. Baek's records are contradicted, but her recitation of the orthopedic examiners findings and opinions shows the treating doctors' opinions were contradicted by the examining physicians. Thus, the ALJ was required to give specific and legitimate reasons for discounting the opinions of Drs. Johnson and Baek, who were treating physicians. *Orn*, 495 F.3d at 632.

As noted above, "[t]he ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). As the Ninth Circuit emphasized in *Magallanes*, an ALJ need not recite "magic words" that "I reject [Drs. Johnson and Baek's] opinion[s]… because . . ." *Id.* at 755. Rather, the Court may properly read the ALJ's discussion of Dr. Johnson's and Dr. Baek's opinions and draw relevant inferences "if those inferences are there to be drawn." *Id.* at 755.

Here, Dr. Johnson's restrictions on Plaintiff's work activity were for a brief period of three weeks subject to a follow up appointment. (AR 198-99.) Because these restrictions were for three weeks only, an inference can be drawn that the ALJ did not treat this as a medical opinion identifying ongoing limitations that would support a finding of disability. Similarly, Dr. Baek's work restriction was to "continue until [Plaintiff] can be seen by an orthopedic doctor." (AR 194-95.) Further, Dr. Johnson's progress notes specifically left it to the "ortho doctor" to "[o]rder MRI at his/her discretion for confirmation." (AR 195.) Here, too, a reasonable inference can be drawn that Dr. Johnson's notes do not reflect a conclusive diagnosis, but a recommended course of treatment pending further confirmation of Plaintiff's condition through an MRI at the discretion of an orthopedic specialist. Similarly, Dr. Baek's progress notes from May 2013 indicate that Plaintiff's work restriction would continue "until [Plaintiff] can be seen by orthopedic doctor." (AR 257.) Dr. Baek likewise left it to the orthopedic specialist to order an MRI "at his/her discretion for confirmation." (*Id.*) Thus, neither Dr. Baek nor Dr. Johnson gave an opinion that Plaintiff has a lasting physical limitation, which is required under Agency regulations for proof of disability. *See* 42 U.S.C. § 1382c(a)(3); 20 C.F.R. §§ 416.909, 416.912 (to establish disability claimant must show the existence of a medically determinable impairment that could be expected to last for a continuous period of not less than twelve months, and the impairment has rendered claimant unable to engage in substantial gainful activity for at least twelve consecutive months). Even so, the ALJ provided adequate explanation for how she viewed these treating doctors' records in the context of the record as a whole.

The ALJ addressed these specific records, stating they included "positive examination findings," but were otherwise unsupported by objective clinical evidence. (AR 29.) The record specifically cited by Plaintiff from Dr. Johnson is dated March 12, 2013. (AR 198-99.) The record specifically cited by Plaintiff from Dr. Baek is dated May 2, 2013. (AR 194-95.) Neither of these records include a reference to any supporting objective clinical tests, such as an x-ray, but x-rays of Plaintiff's thoracic and lumbar spine were taken in

February 2013 that revealed mild levoscoliosis of the thoracic spine and a normal lumbar spine. (AR 208-09.)

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). While the x-ray showed mild levoscoliosis, there is nothing in the record to indicate that the temporary restrictions ordered by Drs. Johnson and Baek were ever converted into permanent restrictions or into opinions on disability. Moreover, while there were positive examination findings, the objective tests showed only "mild levoscoliosis" and were otherwise normal. (AR 29.) The ALJ also noted a normal lumbar x-ray from 2014. (AR 29.) The ALJ's review of the record for the time period encompassing these two doctor's opinions shows there was no substantial evidence in the record to support finding their restrictions were anything other than temporary.

Medical opinions not based on clinical evidence can be rejected. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ noted that while the 2014 treatment records from Dr. Johnson "document ongoing pain complaints and requests for medication refills" there were "only occasional objective assessments demonstrating lumbar tenderness and reduced range of motion." (AR 29.) These are specific and legitimate reasons for discounting Dr. Johnson's opinions. The ALJ noted that lumbar x-rays taken in March 2014 were normal and the orthopedic consultative examiner, Dr. Hoang, documented "lumbar tenderness and reduced flexion," but the examination was "otherwise within normal limits." (*Id.*) Further the ALJ noted that Plaintiff had declined to have injections as well as surgery to help alleviate her back pain. (AR 30.)

Although the ALJ also addressed the 2015 x-ray that showed Plaintiff had hemisacrilization and pseudarthorsis, the x-rays near the time of Dr. Johnson's and Dr. Baek's opinions did not show any such physical abnormality. The objective tests done close

in time to the doctors' opinions are the basis for those opinions, and x-rays in 2013 and even in 2014 do not support Plaintiff's suggestion that these doctors had provided sufficient evidence to render Plaintiff disabled by her condition. Moreover, even if these doctors had opined that Plaintiff was disabled, "the treating physician's opinion on the ultimate issue of disability is not necessarily conclusive." *Rodriguqez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989). The ultimate determination of disability is expressly reserved to the Commissioner. (*Id.*)

The ALJ stated that she gave "great weight" to the opinion of the medical expert, Dr. Anthony Francis, who testified at the ALJ hearing. (AR 30.) The ALJ found that the medical expert had reviewed Plaintiff's record, his medical opinion was well supported by the relevant evidence, and he was an orthopedic specialist with Board certifications in surgery and spinal surgery. (AR 30.) The factors used when weighing medical opinions are: (1) has the source examined Plaintiff; (2) the length, frequency, nature, and extent of the treatment relationship; (3) how well is the opinion supported by relevant evidence; (4) how consistent is the opinion with the record; (5) is the source a specialist; and (6) any other factors. 20 C.F.R. § 416.927(c)(1)-(6).

Here, as noted, the ALJ thoroughly discussed the opinions of Drs. Johnson and Baek in her decision, and expressly identified the opinion of medical expert, Dr. Francis, as being more consistent with the objective medical evidence. In so doing, even though the ALJ did not expressly assign a weight to the opinions of Dr. Johnson and Dr. Baek, she nonetheless satisfied her obligation to provide a comprehensive summary, make interpretations, and give specific and legitimate reasons for discounting these two treating doctors' medical opinions. *Orn*, 495 F.3d at 632.

Accordingly, the Court finds no legal error in the ALJ's assessment of the medical opinions of Plaintiff's treating physicians.

Even if the ALJ erred by failing to expressly articulate what weight she gave to the opinions of Drs. Johnson and Baek, any error was harmless. Because the ALJ's decision contains specific and legitimate reasons for discounting the opinions of these treating physicians, the ALJ's decision-making path is clearly discernible. Consequently, neither remand for an award of benefits nor remand for further administrative proceedings is warranted and the ALJ's decision must be affirmed.

**CONCLUSION**

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is AFFIRMED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and counsel for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: October 24, 2018

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE